NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1410, -1435

TUNA PROCESSORS, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

v.

HAWAII INTERNATIONAL SEAFOOD, INC.,

Defendant/Counterclaimant-
Cross Appellant,

and

WILLIAM R. KOWALSKI,

Counterclaimant-Cross Appellant.

Michael S. Elliott, Crowell Ing, LLP, of Salem, Oregon, argued for plaintiff/counterclaim defendant-appellant.  With him on the brief were Carl D. Crowell, Michelle L.H. Ing and R. Grant Cook.  Of counsel was Paul Alston and Louise K.Y. Ing, Alston, Hunt, Floyd & Ing, of Honolulu, Hawaii.

Milton M. Yasunaga, Cades Schutte LLP, of Honolulu, Hawaii argued for defendant/counterclaimant-cross appellant and counterclaimant-cross appellant.  With him on the brief was Allison Mizuo Lee.

Appealed from:  United States District Court for the District of Hawaii

Magistrate Judge Barry M. Kurren

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-1410, -1435

TUNA PROCESSORS, INC.,

Plaintiff/Counterclaim Defendant-
Appellant,

v.

HAWAII INTERNATIONAL SEAFOOD, INC.,

Defendant/Counterclaimant-
Cross Appellant,

and

WILLIAM R. KOWALSKI,

Counterclaimant-Cross Appellant.

Appeals from the United States District Court for the District of Hawaii in
Case No. 05-CV-00517, Magistrate Judge Barry M. Kurren.

———————————

DECIDED:  April 23, 2009

———————————

Before LOURIE, ARCHER, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

In a patent infringement suit between Tuna Processors, Inc. ("TPI") and Hawaii International Seafood, Inc., et al., the United States District Court for the District of Hawaii entered an order construing certain claims of TPI's U.S. Patent 5,484,619 ("the '619 patent"). Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc., No. 05-cv-00517, 2007

U.S. Dist. LEXIS 77396 (D. Haw. Oct. 17, 2007). Following claim construction, the parties entered into a stipulated judgment of noninfringement. The district court then entered a final judgment of noninfringement, from which TPI now appeals. See Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc., No. 05-cv-00517, Stipulation for Entry of Final J. and Order (D. Haw. May 7, 2008) (Dkt. No. 193) ("Stipulated Final Judgment"). Hawaii International Seafood, Inc. and William Kowalski (collectively, "HISI") cross-appeal from the district court's denial of their motion for partial summary judgment. See Tuna Processors, Inc. v. Haw. Int'l Seafood, Inc., No. 05-cv-00517, 2006 U.S. Dist. LEXIS 76885 (D. Haw. Oct. 17, 2006). Because the court correctly entered judgment of noninfringement, we affirm. HISI's cross-appeal is moot.

## BACKGROUND

The tuna fish enjoyed by U.S. diners is often caught in and shipped from distant locations. Given the relatively long travel time required to deliver tuna to U.S. consumers, importers seek out ways of preserving the fresh look and taste of their fish. This case involves a patent dispute that centers on a method of curing tuna fish meat using cooled smoke.

Kowalski is the sole owner of Hawaii International Seafood, Inc. ("Hawaii Int'l"), a company that imports sushi grade tuna into the United States. Kowalski is also the owner of U.S. Patent 5,972,401, entitled "Process for Manufacturing Tasteless Super-Purified Smoke for Treating Seafood to be Frozen and Thawed." Kowalski licenses his patented method to Hawaii Int'l, as well as other companies involved in curing tuna.

The '619 patent, entitled "Method for Curing Fish and Meat by Extra-Low Temperature Smoking," issued to Kanemitsu Yamaoka, among others, on January 16,

1996. Claim 1 of the '619 patent reads as follows:

A method for curing raw tuna meat by extra-low temperature smoking comprising the steps of:

burning a smoking material at 250° to 400° C. and passing the produced smoke through a filter to remove mainly tar therefrom;

cooling the smoke passed through the filter in a cooling unit to between 0° and 5° C. while retaining ingredients exerting highly preservative and sterilizing effects; and

smoking the tuna meat at extra-low temperatures by exposure to the smoke cooled to between 0° and 5° C.

Shortly after the issuance of the '619 patent, Yamaoka and Kowalski entered into a nonexclusive license agreement that permitted Kowalski to use the invention. The license agreement stated that Kowalski did not believe that he was "infring[ing] on any valid claims of the ['619] Patent," but that he was obtaining a license agreement "in order to prevent the Other Inventors [of the '619 patent] from asserting . . . unlicensed infringements on the Patent." The license agreement ran through December 10, 2004.

On January 15, 2003, the '619 patent, as well as the rights under the license agreement between Yamaoka and Kowalski, were assigned to TPI. TPI, a holding company based in California, was created by several Philippine-based tuna exporters in order to administer the '619 patent. On the day that Kowalski's license expired, TPI filed an infringement action against HISI in the United States District Court for the Eastern District of Michigan. HISI successfully moved for transfer of the case to the United States District Court for the District of Hawaii.

Following transfer of the case, HISI moved for partial summary judgment of noninfringement and requested an order barring TPI from asserting the doctrine of equivalents against HISI. In that motion, HISI argued that the "disclosure-dedication

rule" limited the '619 patent to smoke produced between 250° and 400° C. According to HISI, the disclosure-dedication rule applied because the claims of the '619 patent were limited to smoke produced between 250° C and 400° C while the specification described smoke temperatures outside of that range. Tuna Processors, 2006 U.S. Dist. LEXIS 76885, at *11-*12. The district court denied HISI's motion for summary judgment, finding that there were material facts that needed to be ascertained before infringement could be determined. Id. at *14-*15. Furthermore, the court declined to construe the claims of the '619 patent at that time. Id. The court denied HISI's motion for reconsideration, finding again that the disclosure-dedication rule did not apply and that the court had not erred in failing to enjoin TPI from asserting any doctrine of equivalents argument. Tuna Processors v. Haw. Int'l Seafood, Inc., No. 05-cv-00517, 2007 U.S. Dist. LEXIS 28135 at *12-*13 (D. Haw. Apr. 16, 2007).

On October 17, 2007, the district court issued its claim construction order for the '619 patent. That order contained three constructions that form the basis of TPI's present appeal. First, the court found that the phrase "burning a smoking material at 250° to 400° C" refers to the temperature of the medium in which the smoking material is burned, not to the temperature of the smoking material itself. Tuna Processors, 2007 U.S. Dist. LEXIS 77396 at *11. In so finding, the court noted that while the claim language and the specification were "ambiguous" on this point, the extrinsic evidence was "decisive." Id. at *10-*11.

Second, the district court construed the step of "passing the produced smoke through a filter to remove mainly the tar therefrom" as only applying to filtration processes that did not filter "flavor-giving particles out of the smoke." Id. at *18. As

support for its construction of the filtration step, the court relied on both the language of claim 1 and the specification's description of imparting flavor through its smoking method.

Lastly, the court construed the step of "exposure to the smoke cooled to between 0° and 5° C" as occurring after the smoke "has already been cooled . . . to between 0° and 5° C." Id. at *20. The court relied heavily on the plain language of the claim itself in reaching its construction of that limitation.

The parties then entered into a stipulated judgment that under the district court's claim construction, HISI had not infringed the '619 patent. The district court entered a final judgment based on that stipulation. TPI timely appealed the district court's final judgment and HISI filed a timely cross-appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Before we address the question of construction of the disputed terms, we turn to the terms of the stipulated agreement, which was entered as the Stipulated Final Judgment. TPI argues that the Stipulated Final Judgment is "at best ambiguous" and that if we reverse one of the three disputed claim constructions we must remand the case for "further factual findings." Oral Argument at 9:28, http://oralarguments.cafc.uscourts.gov/mp3/2008-1410.mp3. HISI counters that if we were to uphold "the District Court's construction on even one of these limitations, there can be no infringement, and the judgment of non-infringement in favor of HISI would stand." Appellant's Br. at 19.

We agree with HISI that affirmance of the construction of one of the disputed

claim limitations results in an affirmance of the judgment of noninfringement. That conclusion is borne out by the plain language of the Stipulated Final Judgment itself. Paragraph 2 of the Stipulated Final Judgment defines the three disputed limitations as "collectively, 'disputed claim construction points.'" Stipulated Final Judgment, at ¶ 2. The final line of the agreement reads:

> If the United States Court of Appeals for the Federal Circuit reverses the disputed claim construction points, the parties may reassert all claims and issues previously set forth on remand to the United States District Court for the District of Hawaii.

Id. at ¶ 7 (emphasis added). Thus, the Stipulated Final Judgment permits reassertion of issues on remand only in the event that we reverse all three disputed limitations, or, as the Stipulated Final Judgment defines them, the "disputed claim construction points."

Furthermore, the agreement stipulates that HISI does not infringe the '619 patent "because the patent claim limitations" are not met by any of the allegedly infringing products. Id. at ¶ 3. Although "patent claim limitations" is not a defined term in the Stipulated Final Judgment, the use of the plural in that phrase amounts to a concession by TPI that the accused products do not meet any of the three disputed limitations. As is well established, for infringement to occur an accused infringer must perform all of the steps of a method claim or the equivalent thereof. See Ricoh Co., Ltd. v. Quanta Computer, Inc., 550 F.3d 1325, 1333 (Fed. Cir. 2008) ("Infringement of a method claim 'occurs when a party performs all of the steps of the process.'") (quoting BMC Res., Inc. v. Paymentech L.P., 498 F.3d 1373, 1379 (Fed. Cir. 2007)). Because TPI has conceded that HISI's products do not infringe any of the three disputed claims as construed by the district court, we must reverse all three constructions in order for TPI to succeed in its appeal.

Having determined the scope of the stipulated judgment and thus the scope of the appeal, we now turn to the appropriate construction of one of the disputed limitations. We review claim construction de novo on appeal. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Claim terms should generally be given their ordinary and customary meaning and such meaning is one "that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips v. AWH Corp., 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc). Moreover, "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id. at 1313.

With these principles in mind, we turn to the appropriate construction of one of the disputed terms. We turn to the third disputed limitation, that of "smoke cooled to between 0° and 5° C." TPI argues that the district court erred by construing that limitation as requiring a process that first cools the smoke and later applies the cooled smoke to the tuna. According to TPI, under the language of the claim, the smoke can be applied to the tuna first, and then cooled to the stated temperature range. In support of that interpretation, TPI notes that the "smoke cooled" limitation does not introduce the smoke using the word "said," which is traditionally used by claim drafters to reference previously-mentioned limitations. Here, the claim instead refers to the smoke as "the smoke cooled," which, in TPI's view, introduces a new element to the claim.

HISI, in contrast, urges us to affirm the district court's construction which requires the smoke to have been cooled before exposing it to the tuna. HISI interprets the phrase "the smoke cooled" as referring to the smoke filtered in the previous step of

claim 1's method. According to HISI, the use of the past tense "cooled" precludes any reading that would permit the cooling and smoking steps to be performed simultaneously or in reverse order. Furthermore, HISI argues, the specification of the '619 patent confirms the order of the cooling steps in the smoking process.

We agree with HISI that to infringe the '619 patent, a method must cool the smoke before the smoke contacts the tuna. The plain language of claim 1 demonstrates that the district court was correct in placing a temporal limitation on the steps of the smoking method. As the district court noted, this case is one in which the "sequential nature of the claim steps is apparent from the plain meaning of the claim language and nothing in the written description suggests otherwise." Tuna Processors, 2007 U.S. Dist. LEXIS 77396 at *19 (quoting Interactive Gift Exp., Inc. v. Compuserve, Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2001)).

Claim 1 describes a multistep process of creating smoke within a particular temperature range and then cooling that smoke to another temperature range. In each step of the method, the smoke is referenced by using a past participle describing the action that occurred in the previous step. To illustrate this, the steps of the '619 patent are reproduced below with the smoke references underlined:

> burning a smoking material at 250° to 400° C. and passing the produced smoke through a filter to remove mainly tar therefrom;
>
> cooling the smoke passed through the filter in a cooling unit to between 0° and 5° C. while retaining ingredients exerting highly preservative and sterilizing effects; and
>
> smoking the tuna meat at extra-low temperatures by exposure to the smoke cooled to between 0° and 5° C.

In the first step of claim 1, the smoke is "produced" by burning a smoking

material.  In that same limitation, the smoke is passed through a filter.  The smoke filtration aspect of the first step, which must occur after the smoke is produced, refers to the smoke as "the produced smoke."  The use of the past participle confirms that the smoke must be produced prior to being filtered.  The second step of claim 1, the cooling step, refers to the smoke as "the smoke passed through the filter."  Again, the use of the past participle "passed" leads to the conclusion that the cooling of the smoke occurs after the smoke has passed through the filter.  In both the first and second steps, the smoke from a previous limitation is referenced using a past participle, indicating that the previous limitation must have occurred prior to the present limitation.  In other words, "the smoke produced" must have been produced prior to filtration, just as the "smoke passed through the filter" must have been filtered prior to being cooled.  In the same manner, the use of the past participle in "the smoke cooled" in the disputed third step requires that the smoke have been cooled prior to contacting the tuna meat for infringement to occur.

Nothing in the specification dissuades us from reading a temporal limitation in the third step of claim 1.  Indeed, the specification confirms the appropriateness of such a temporal limitation.  The second step of claim 1 states that the smoke is cooled in a "cooling unit."  '619 Patent, Cl.1.  The Summary of the Invention of the '619 patent instructs that the smoke from the "smoke-cooling unit" is exposed to the tuna in a separate location, "a smoking chamber."  Id. col.1 ll.63, 65; see also id. fig.1, col.4 ll.13-14 (drawing of separate locations for the smoking chamber and smoke-cooling unit).  The presence of two distinct locations for the cooling step and the exposure step eliminates the possibility of simultaneous cooling and exposure.  The Summary of the

Invention further indicates that the smoking chamber is where pieces of tuna are placed together and "exposed to smoke from the smoke-cooling unit." Id. col.1 ll.66-67. Thus, the smoke must have been cooled prior to being introduced into the smoking chamber. Numerous other references in the specification confirm this sequential ordering of steps. See id. col.3 ll.33-40 (teaching that the smoke from the smoke-cooling unit is "brought into contact" with fish in the smoking chamber); col.4 ll.66-col.5 l.1 ("The smoke-cooling unit **3** delivers the smoke cooled to between 0° and 5° C. through the pipe **32** to the smoking chamber **4**.").

TPI's argument that the use of the definite article "the" in the third step somehow indicates that the smoke used in that step is different from the smoke in the previous step is without merit. As demonstrated above, all of the steps of claim 1 clearly refer to the same smoke. There is nothing in the claims or specification of the '619 patent that would indicate that smoke different from the filtered and cooled smoke of the first and second steps is introduced in the last step of the method. The '619 patent is concerned with creating smoke having a particular temperature, preservative ability, and flavor in order to optimally cure tuna fish. TPI's claim that a new type of smoke is introduced during the last step of the process runs contrary to the entire purpose and design of the '619 patent and its claims. It simply is an attempt to cloud the issue.

Furthermore, TPI's claim drafting argument misstates traditional claim drafting practice. Indeed, the introduction of a new element is accomplished through the use of an indefinite article, not through the use of a definite article. See, e.g., Robert C. Faber, Faber on Mechanics of Patent Claim Drafting, App. D-1 (6th ed. 2008) ("the definitive article THE is used to refer to an ELEMENT which has been established earlier in a

claim."); see also 2 Manual of Patent Examining Procedure, ch. 2173.05(e) (8th ed. 2006) (giving an example of an indefinite claim caused by use of the term "the lever" without an antecedent introduction of "a lever"). Thus, the use of the definite article in the third step of claim 1 supports our conclusion that "the smoke cooled" is the smoke from the previous step.

In light of all of the above, we conclude that the third step of claim 1 of the '619 patent must occur after the smoke has been cooled to between 0° and 5° C for infringement to exist. Having reached that conclusion, we affirm the district court's final judgment of noninfringement. It is not necessary for us to consider the other contested claim terms in light of the stipulation.

As for HISI's cross-appeal, it is rendered moot by our decision above.

CONCLUSION

Because the district court correctly construed "exposure to the smoke cooled to between 0° and 5° C," we affirm the court's final judgment of noninfringement.

AFFIRMED

COSTS

Costs to be awarded to HISI.